## No. 2547.

### JAMES HANSON v. THE STATE.

1. THEFT — EVIDENCE — ACCOMPLICE  TESTIMONY. — OWNERSHIP, like every other material issue on a trial for theft, must be proved by competent evidence, and if it rests upon the testimony of an accomplice such proof is insufficient unless legally corroborated.

2. SAME—FACT CASE.—See the statement of the case for the substance of evidence *held* insufficient to support a conviction for theft.

APPEAL from the District Court of Kimble.    Tried below before the Hon. A. W. Moursund.

This conviction was for the theft of a cow, the property of L. P. Dodson.   The penalty assessed by the verdict was a term two years in the penitentiary.

J. J. Stockbridge was the first witness for the State.   He testified, in substance, that he was in the employ of one Bybee, in Kimble county, on the first day of April, 1887.   On the morning of that day, the defendant, armed with Bybee's gun, rode up to Bybee's camp, and Bybee asked him if he had "found that beef." Defendant replied that he had found one that would do, and asked Bybee if he would go and help kill it.   Bybee sent the witness in his stead.   Defendant piloted witness to a certain point and indicated a certain red cow, and directed witness to drive her to a point where he could shoot her.   Witness did so, and defendant fired upon and killed the cow.   Witness helped him but little in skinning the cow.   Defendant then cut off the two hind quarters of the beef and put them on his horse.   He then cut off the ears, which he put in his coat pocket.   He then cut into strips those parts of the hide on which the brands were placed.   Then he went to camp

with the two hind quarters, leaving the balance of the beef and the remainder of the hide. Some of that beef was eaten at supper that night by the witness, defendant and others. The animal was branded DOD on one side and SON on the other. On the morning after killing the cow, witness and defendant cut some of the beef into strips and hung it up to dry.

On his cross examination this witness said that soon after the killing of this cow, the sheriff took possession of the horses which witness was then herding for Bybee. Bybee escaped arrest. Witness was not placed under arrest by the sheriff, but at the sheriff's request he assisted in driving the horses to Junction City. On his arrival at Junction City he made an affidavit charging defendant with the theft of the cow. He did not then know who owned the cow or the brand described, nor did he then know that defendant was not authorized to kill the said cow. Witness suspected nothing wrong about the killing of the cow until defendant cut off the ears. He would have helped skin the cow had his knife been sharp enough, and would have helped take the meat to camp had his horse been gentle enough. Witness did not, while at defendant's camp, cut fresh raw hide into hopples or neck strips for Bybee's horses, of which he then had charge.

L. P. Dodson testified, for the State, that his wife owned the DOD—SON brand of cattle, but they were in the exclusive care, control and management of witness. He had no recollection of missing any particular animal in the spring of 1887, but he never gave his consent to defendant to take or kill any of that stock.

Deputy Sheriff Oliver testified, for the State, that he was at defendant's camp a day or two after the alleged theft, and saw the hind quarter and part of another hind quarter of a beef in that camp. Some strips of fresh beef were hanging up to dry. He also saw in that camp some strips of fresh cow hide, red in color. The strips were of a size usually used for hopples. At a point near the said camp witness and one Brown found two men in charge of a bunch of horses. One of the men fled, and witness took charge of the horses as stolen property. The witness Stockbridge, who was the other man with the herd, helped witness to drive the horses to Junction City. He was not placed in arrest. On the way to Junction City, Stockbridge told witness about the defendant killing the DOD—SON cow.

The State closed.

J. J. Stockbridge was recalled by defendant as his first witness. He denied that, two or three months after the alleged theft, he met Allen Hanson and Ed Dunn near his, witness's, father's house, in Comanche county, and told them that he got into trouble about some horses that were found in possession of himself and Bybee, near defendant's camp in Kimble county, and that, to save himself from prosecution and conviction for complicity in the theft of those horses, he was compelled to file an affidavit charging defendant with the theft of Dodson's cow.

Allen Hanson and Ed Dunn, testifying for the defense, deposed that the State's witness Stockbridge did, in Comanche county, near the house of his, Stockbridge's, father, tell them that two or three months previously he and Bybee were discovered by officers, near defendant's camp, in possession of a herd of stolen horses; that Bybee escaped, and that, to save himself from prosecution for the theft of those horses, he was compelled to file the affidavit charging defendant with the theft of Dodson's cow.

*A. D. McGinnis*, for the appellant.

*W. L. Davidson*, Assistant Attorney General, for the State.

HURT, JUDGE. This conviction is for theft of a cow, the alleged property of L. P. Dodson. Upon the trial the State introduced as a witness one Stockbridge, who was evidently an accomplice. He swore to facts which very cogently criminated the defendant, but, being an accomplice, was he sufficiently corroborated?

The cow was alleged to be the property of L. P. Dodson. There is not the slightest testimony in this record, save that of Stockbridge, which tends to prove that the animal belonged to Dodson, or that Dodson had lost or missed the cow. Upon the issue of ownership the accomplice must be corroborated. (Croell v. The State, 24 Texas Ct. App., 404.)

Again, that the accused stole the cow of any person is shown only by the testimony of Stockbridge, the accomplice. He states that defendant carried the beef and part of the hide to his camp; that the cow was red, etc.; that she was killed about April 1; that defendant hung up the meat to dry, etc.

Deputy Sheriff Oliver was at the camp of defendant about

the last of March or first of April, and saw fresh beef and some strips of hide, and also some beef hung up to dry. He also saw some fresh raw hide (red) cut up in strips of suitable size for hopples. The testimony of Oliver constitutes the supposed corroboration. Now let us eliminate from the case the evidence of Stockbridge. What fact is there in the evidence of Oliver which would induce a reasonable person to infer that defendant had stolen the beef? At his camp was found a hind quarter and other portions of a beef. This meat was fresh. Some was hung up to dry. The hide of the animal was red. Some of the hide was cut up in strips of suitable size for hopples. Is this evidence tending to show that Dodson's animal was stolen and that defendant was connected with the theft? We think not.

Appellant reserved no bill of exceptions to the action of the court in overruling his application for a continuance.

Because the witness Stockbridge was not corroborated as to the ownership of the animal, and because he was not corroborated as to the theft by appellant of any person's animal, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered January 30, 1889